IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MARK TACKETT                                                        PLAINTIFF

v.                              CASE NO. 4:24-cv-496-JM

UNITED STATES POSTAL SERVICE                                        DEFENDANT

### ORDER

Plaintiff Mark Tackett brought this *pro se* employment discrimination case against his employer alleging he suffered discrimination and retaliation because of his race, gender, disability, and age in violation of Title VII of the Civil Rights Act of 1964, s*ee* 42 U.S.C. §§ 2000e, *et seq*., the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). (Doc. 1 at 4).  Before the Court is Defendant's motion for summary judgment (Doc. 29), to which Tackett has responded (Doc. 32), and Defendant has replied (Doc. 35).  For the reasons stated below, Defendant's motion for summary judgment (Doc. 29) is GRANTED.

### I.      Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987), FED. R. CIV. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there
> is a need for a trial -- whether, in other words, there are any genuine factual
> issues that properly can be resolved only by a finder of fact because they may
> reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial on disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Additionally, the Local Rules of the Eastern District of Arkansas require the party moving for summary judgment to file (along with its motion and brief) a "separate, short and concise statement of the material facts" stating that there are no disputed facts. LOCAL RULE 56.1(a). These facts are deemed admitted when not contested by a separately filed statement of fact. LOCAL RULE 56.1(b)-(c); FED. R. CIV. P. 56(e)(2). Tackett did not file this pleading. As a result, Tackett has not complied with the local rule, and the Court will deem Defendant's statement of fact admitted.

## II.     Facts

Tackett, a Caucasian white male born in 1963[1], began working for the United States Postal

---

[1] Neither party provided the Tackett's exact date of birth; instead, simply referencing him as "over forty" at all relevant times.

Service as an IT Client Support Specialist in 2014. (Doc. 1 at 5; Doc. 30-1 at 3). When his supervisor, Jill Porto, retired in 2019 as the Manager of Information Systems, Tackett expressed interest in the position. (Doc. 1 at 11; Doc. 30-1 at 4, 9). There was no detail assigned to the position; rather, Porto's responsibilities were handled by another manager for a four month time-frame before the position was formally posted on July 30, 2019. (Doc. 1 at 42–43; *Id*. at 9–10). Tackett applied for the position, met the posted qualifications, and was granted an interview. (*Id*. at 10–11). He was approximately 51 years old at the time. Dennis Schnebelen, a white male who was as old, or older than Tackett, was also interviewed. (*Id*. at 12, 14). Defendant awarded Schnebelen the Manager of Information Systems position. (*Id*.).

After learning that he was denied the promotion, Tackett explained that he was "extremely angry and upset." (*Id*. at 17). Fearing he was having an "incident" because of a racing pulse and elevated blood pressure, Tackett left work to seek medical attention. (*Id*. at 16–17). Tackett then took sick leave and did not return to work until May 2020. (*Id*. at 17–18, 20). Tackett told neither David Camp who was the Manager of the Arkansas District of the U.S. Postal Service, nor Schnebelen, his new manager, that he suffered from high blood pressure nor did he provide either men with any of his medical documentation. (*Id*. at 17).

Following Schnebelen's hiring, Tackett did two things in October 2019. First, he contacted the Postal Service Council for Ethical Conduct to formally report his belief that Schnebelen was a nepotism hire. (*Id.* at 12). Specifically, Tackett reported that Camp, who conducted the interview and who made the hiring decision, and Schnebelen were close friends. (*Id*. at 6, 12–13). Tackett contended that Camp's hiring decision was motivated by the fact that he and Schnebelen were "long time hunting and fishing buddies." (*Id*. at 12–13). Tackett did not suggest to the Postal Council that Camp's decision was based on Tackett's race, gender, age, disability, or in retaliation.

3

(*Id*. at 12–13).

Second, Tackett filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging Defendant failed to promote him because of his race (Caucasian), gender (male), color (white), and age (over 40) and in reprisal for prior EEOC activity. (Doc. 1 at 10; Doc. 30-1 at 5). The prior EEOC activity referenced in Tackett's claim was actually that of his wife, who also worked for Defendant. (Doc. 30-1 at 6–7). Tackett could not remember when his wife sought relief but recalled it involving the denial of her request for a downgraded position in order to facilitate a relocation. (*Id*.). Tackett was not involved with his wife's EEOC charge, providing neither an affidavit nor testimony to support it. (*Id*. at 6–8).

Months later, while on sick leave, Tackett's access to his work cell phone and computer were deactivated. His computer was deactivated in February 2020, and his work cell phone was deactivated in March 2020. (*Id*. at 15). Tackett admits he had been absent from work for at least ninety days when his devices were deactivated. (*Id*. at 18–19). Tackett says he was given no explanation before the deactivation and only discovered it when he attempted to call a coworker on March 4, 2020. (*Id*. at 19). He learned that his email had also been deactivated when he attempted to log into his work email to assist a coworker with something. (*Id*. at 20). Tackett admits that Schnebelen had not asked him to work while on leave. (*Id*.). He also admits that he never reached out to Schnebelen while on leave. (*Id*.). After this discovery, Tackett amended his EEOC Complaint on March 13, 2020 alleging the deactivations constituted disability discrimination and retaliation. (Doc. 1 at 14; Doc. 30-1 at 15).

On April 27, 2020, Schnebelen sent Tackett a letter requesting that he provide updated medical documentation or risk being charged absent without leave. (*Id*. at 22–23). Tackett provided the paperwork to Lola Brunson in the Injury Compensation Department and returned to

work in May 2020. (*Id*. at 23). On his return to work, both Tackett's computer and cell phone were reactivated. (*Id*. at 20–21). During his leave, Tackett did not communicate with Schnebelen; instead, his leave requests were sent through the US Postal Service email. (*Id*. at 21). At no point during his leave was Tackett considered absent without leave or denied pay. (*Id*. at 23). Tackett was able to use sick leave for his absence. (*Id*. at 24).

On return to fulltime employment, Tackett applied for a Manager in IT Client Support position in June 2021. (Doc. 1 at 44–45; Doc. 30-1 at 25). The position listing noted that Clayton Henry would be the selecting official and included ten qualifications and requirements to be considered. (Doc. 1 at 44–45; Doc. 30-1 at 26). Henry was not located in Arkansas and neither supervised Tackett nor was he involved with Tackett's previous EEOC claims. (Doc. 1 at 24; Doc. 30-1 at 25). Tackett did not meet the qualifications for the position having received a raw score of zero for having failed to meet one of the ten qualifications and was not interviewed. (*Id*. at 26-29). Ultimately, Henry awarded the position to David Lee, who was older than Tackett. (*Id*. at 30–31).

During the same period, Tackett also applied for an IT Client Specialist position, which was also selected by Henry. (*Id*. at 32). This position listed eight qualification and requirements. (*Id*. 32–33). Tackett admits his application failed to address all eight requirements. (*Id*.). Again, because Tackett did not meet all of the minimum qualifications for the position, he was given a zero raw score and denied an interview. (*Id*. at 33–36, 42). In contrast, Robert Russell, a fifty-year-old man, received the highest score and secured the position. (*Id*.).

After being denied interviews, Tackett filed his second EEOC charge alleging he was denied the promotions because of his age and in retaliation for his previous protected activity. (*Id*. at 24). Tackett has since admitted that he has no reason to believe he was denied the promotions because of his age. (*Id*. at 24).

5

### III.   Analysis

To establish a prima facie case of discrimination for failure to promote, Tackett must show that "(1) he is a member of a protected group; (2) he was qualified and applied for an available position; (3) he was rejected; and (4) employees similarly situated but not part of the protected group were promoted instead." *Ross v. Kan. City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002) (citation omitted). Similarly, success on an age discrimination claim requires that Tackett show:  (1) he was at least forty years old; (2) was meeting Defendant's expectations; (3) but nevertheless suffered an adverse employment action; and (4) similarly-situated younger employees were treated more favorably. *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007); 29 U.S.C. § 623(a)(1). Likewise, to succeed on a claim of race or national origin discrimination, Tackett must demonstrate that: "(1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).

Title VII's anti-retaliation provision protects employees who have suffered an adverse employment action for engaging in a statutorily protected activity. *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016); 42 U.S.C. § 2000e-3(a). An adverse employment action is "a tangible change in working conditions" such as cuts in pay, termination or constructive discharge. *Wilkie v. Dep't of Health and Human Serv.*, 638 F.3d 944, 955 (8th Cir. 2011). Minor changes in duties or working conditions, even if unwelcome or inconvenient, are not enough. *Kelleher v Wal-Mart Stores, Inc.*, 817 F.3d 624, 632 (8th Cir. 2016).

Tackett offered no direct evidence of discrimination. As a result, his claims will be

considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Tackett establishes a *prima facie* case of discrimination, then the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for its actions. If Defendant satisfies its burden, the burden shifts back to Tackett to show Defendant's proffered reason was pretextual. *Thomas*, 483 F.3d at 528 (citing *McDonnell Douglas*, 411 U.S. at 804).

The Court will take Tackett's claims in turn.

First, the Court will address his October 2019 allegation that he was denied a promotion because of his race, gender, color, and age or in reprisal for prior EEOC activity. Under the previously noted standards, the Court finds that Tackett has neither shown a *prima facie* case of discrimination nor retaliation. The Court need look no further than that Tackett and Schnebelen were both white males of the same age and qualifications. Because Tackett has not shown that a similarly situated person, not a part of the protected group, was promoted instead of him, the inquiry need not go further. There is simply no evidence of discriminatory animus in the hiring decision.

Likewise, Tackett has not shown that the decision to hire Schnebelen was retaliatory. In October 2019, Tackett had not filed any EEOC charges. Tackett's assertion that his wife's previous protected activity motivated the decision is tenuous at best.  He admits he was not involved in her action in any way and could not even remember when she sought that relief. Rather, as he successfully argued to the Postal Ethical Council, the hiring decision was motivated by Camp's friendship with Schnebelen and not by any prior protected activity pursued by Tackett's wife. Tackett reiterates this fact in his reply by arguing he lost the position due to "favoritism." (Doc. 34 at 1). Favoritism does not support a claim of discrimination. This claims fails on its face and is dismissed.

Tackett next contends that Defendant's decision to deactivate his phone and computer while he was off work was retaliatory and evidence of disability discrimination. He also suggests Defendant's April 2020 letter requesting medical documents to support his continued leave was retaliatory. While Tackett relied on the ADEA, the Rehabilitation Act rather than the ADA governs federal employees. *Ballard v. Rubin*, 284 F.3d 957, 960 n.3 (8th Cir. 2002); 29 U.S.C. § 701 *et seq*. Regardless, the legal standards governing both are interchangeable. *Lewis v. Johanns*, 180 F. App'x 599, *2 (8th Cir. 2006). Disability discrimination claims follow the familiar posture of other discrimination claims. In order to succeed, Tackett must establish that (1) he has a qualifying disability, (2) he is qualified to perform the functions of the position, with or without accommodations, and (3) he suffered an adverse action due to his disability. *LeBlanc v. McDonough*, 39 F.4th 1071, 1077 (8th Cir. 2022). And, once Tackett meets this burden, a rebuttable presumption of discrimination arises, moving the burden to Defendant to establish a legitimate nondiscriminatory reason for the adverse employment action. *Id*. If Defendant meets this burden, then the burden shifts back to Tackett to show that the explanation is pretextual for disability discrimination. *Id*.

Foremost, Tackett offers no factual support for his allegation that he suffered from high blood pressure or legal support for his claim that it is a qualifying disability, but Defendant does not press the point. Accordingly, for the purposes of this case only, the Court will accept as true that Tackett's treatment for high blood pressure qualifies as a disability. Defendant also does not suggest that Tackett was not qualified to perform the functions of his job. Thus, the Court will also accept that Defendant was qualified to perform the requirements of his job. Instead, Defendant argues that Tackett failed to plead a *prima facie* case of disability discrimination because he did not suffer an adverse employment action. The Court agrees.

During leave, Tackett lost access to his work phone and computer. He was not expected to call into work or to use his laptop during his sick leave, he was continually paid without interruption, and the access was restored when he was able to return to work. And by all accounts, it appears that neither Camp nor Schnebelen were aware of his health issue as Tackett did not discuss it with either of them, and Tackett was reporting his leave through a separate division of the Postal Service. All that being said, the deactivation of the cell phone and computer while on leave amounts, at best, to a minor inconvenience—evidenced further by the fact that Tackett was not even aware that either had been deactivated until months after taking leave. As previously noted, minor changes in duties or working conditions, even if unwelcome or inconvenient, are not enough. *Kelleher*, 817 F.3d at 632; *see also Manni v. ORS Nasco*, 2006 WL 1715939, *7 (D. Minn. 2006) (holding deactivated passkey and expired computer password were minor inconveniences and not adverse employment actions).

Tackett has failed to demonstrate that the deactivation of either his cell phone or laptop constituted an adverse employment action; therefore, this claim fails as a matter of law. Without an adverse employment action, Tackett also cannot show the deactivations were retaliatory or that the April 2020 letter was retaliatory. Rather, Defendant had every right within its agency operations to inquire whether Tackett intended to return to work and to request medical documentation to support further leave. Moreover, it appears that Schnebelen reported not even knowing about Tackett's March 2020 EEOC amendment until May 1, 2020 – after he had already sent the inquiry letter. (Doc. 1 at 14). Tackett has not shown that this request was discriminatory or resulted in any adverse action.

Finally, Tackett alleges that he was twice denied promotions in 2021 either because of his age or in retaliation for his previous protected activities. Defendant again argues that Tackett

cannot meet a *prima facie* case of either because he was not qualified for either position. The Court again agrees. Tackett does not contest that he did not meet the qualifications. And, in his deposition, Tackett admitted to having no reason to believe he lost the positions because of his age. Regardless, the individuals hired, like Tackett, were both over forty and, unlike Tackett, met the minimum requirements for the listed positions. Furthermore, Henry, the official overseeing the hiring of both positions was located out of state and did not know Tackett. As a result, Tackett has not only failed to show a *prima facie* case of age discrimination but also failed to show any causal connection between Henry's decision not to interview him based on his lack of qualifications to support a retaliation claim.

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment (Doc. 29) is GRANTED. The case is dismissed with prejudice.

IT IS SO ORDERED this 6th day of February 2026.

_____
UNITED STATES DISTRICT JUDGE